[Cite as *Cadlerock Joint Venture, L.P. v. Freeway Circle Properties, L.L.C.*, 2011-Ohio-3986.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    96003

# CADLEROCK JOINT VENTURE, L.P.

PLAINTIFF-APPELLEE

vs.

# FREEWAY CIRCLE PROPERTIES, LLC, ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-679111

**BEFORE:**   Boyle, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:**    August 11, 2011

**ATTORNEY FOR APPELLANT**

Robert G. Miller
1940 Huntington Building
925 Euclid Avenue
Cleveland, Ohio   44115

**ATTORNEYS FOR APPELLEES**

Joseph D. Datchuk
100 North Street Center
Newton Falls, Ohio   44444

Brian J. Green
Shapero & Green LLC
Signature Square II
25101 Chagrin Boulevard, Suite 220
Beachwood, Ohio   44122

MARY J. BOYLE, P.J.:

{¶ 1} Defendants-appellants, Freeway Circle Properties, LLC ("Freeway Properties"), and Sally and Abraham Schwartz (collectively the "Schwartzes"), appeal from a judgment in favor of plaintiff-appellee, Cadlerock Joint Venture, L.P. ("Cadlerock"), in the amount of $502,192.95 ($345,269.94 principal balance, plus accrued interest as of September 2, 2010).   Appellants raise one assignment of error for

our review, namely, that the trial court erred in finding in favor of Cadlerock. We find no merit to the appeal and affirm.

Procedural History

**{¶ 2}** In March 2006, Sally Schwartz, as manager of and on behalf of Freeway Properties, executed an open-end mortgage note ("Note"), in which Freeway Properties promised to pay $1,560,000, plus interest, to Fifth Third Bank. That same day, Sally and Abraham Schwartz also signed a contract personally guaranteeing payment of the note. The loan was for the purchase of property with an office building located at 7850 Freeway Circle, in Middleburg Heights, Ohio.

**{¶ 3}** In December 2008, Cadlerock filed a complaint upon a cognovit note and cognovit guaranty against appellants, alleging that the Schwartzes had executed and delivered the Note to Fifth Third Bank, owing a balance due of $449,428.50, and that the Schwartzes had personally guaranteed payment of the Note. Cadlerock further alleged that it was the "owner and holder of the note by virtue of an allonge" attached to the Note.

**{¶ 4}** Cadlerock attached the Note and personal guaranties to the complaint, as well as the allonge. The allonge, executed on August 29, 2008, stated:

**{¶ 5}** "Reference is made to the $1,560,000.00 open-end mortgage note, dated March 14, 2006, from Freeway Circle Properties, LLC, as borrower and Sally Schwartz

as manager, payable to the order of Fifth Third Bank.   ('Note').   It is intended that this allonge be attached to and made a permanent part of the note.

{¶ 6}   "Pay to order of Cadlerock Joint Venture, L.P., ("assignee"), without recourse, representations or warranties of any kind."

{¶ 7}   The trial court immediately granted a cognovit judgment against appellants in the amount of $449,428.50, plus 8.5 percent interest continuing to accrue.   Six months later, appellants moved for relief from judgment pursuant to Civ.R. 60(B), which the trial court granted.

{¶ 8}   The trial court held a bench trial on the matter in September 2010, after which it found in favor of Cadlerock.   It is from this judgment that appellants appeal.

{¶ 9}   In their sole assignment of error, appellants raise three issues.   They claim that Cadlerock: (1) failed to prove that it was an assignee of the promissory note; (2) failed to prove that it was an assignee of the Schwartzes' personal guaranties; and (3) failed to prove its damages.

## Standard of Review

{¶ 10} Appellants argue that the trial court erred in granting judgment to Cadlerock because Cadlerock failed to prove its case.   Thus, appellants essentially raise a challenge to the manifest weight of the evidence.   In a civil case, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of

the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.

### Assignment of the Note

{¶ 11} Appellants first argue that Cadlerock did not prove that it was the assignee of the Note, or the real party in interest, and therefore, was not entitled to enforce the Note. Cadlerock counters that it proved that it was the assignee of the Note based on the allonge that was attached to the Note. We agree with Cadlerock.

{¶ 12} "The use of an allonge to add [endorsements] to an instrument when there is no room for them on the instrument itself dates from early common law." *Southwestern Resolution Corp. v. Watson* (1997), 964 S.W.2d 262, 263. Historically, allonges were only permitted when no room existed on the note for further endorsements. Id. But the current version of the UCC, codified as R.C. 1303.24(A)(2), allows allonges even where room exists on the Note for further endorsements. The paper, however, must be affixed to the instrument in order for the signature to be considered part of the instrument. Id.

{¶ 13} Appellants agree that the allonge and an Asset Sale Agreement, which was the agreement between Fifth Third Bank and Cadlerock where Fifth Third Bank sold the Note to Cadlerock, establish that Cadlerock was the assignee of the Note. But appellants argue that the trial court erred in admitting the allonge and the Asset Sale Agreement into evidence. They claim that the allonge was signed by an employee of Cadlerock pursuant to a limited power of attorney set forth in the Asset Sale Agreement. Appellants argue that because Cadlerock failed to identify the Fifth Third Bank representative who signed the Asset Sale Agreement, the trial court erred in admitting these two exhibits, and without these two exhibits, there is no evidence that Cadlerock was the assignee of the Note.

{¶ 14} The trial court's discretion to admit or exclude evidence is broad "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056. After a review of the transcript, we find no fault on the part of the trial court. Robert Ellcessor, an account officer and custodian of records for Cadlerock, testified that he had responsibility over the Note and documents relating to it. He identified the Note and the allonge, as well as the Asset Sale Agreement as being documents that he had control and custody of in the ordinary course of business.

{¶ 15} Robert Rutt testified that he was the officer assigned to the Note when the Schwartzes stopped paying it. Rutt said that he obtained approval from senior

management at the bank for the Schwartzes to sell the Freeway Circle property for $1,100,000, which was less than the amount still owed on the loan. Rutt explained that the bank never released the Freeway Circle Properties or the Schwartzes from the deficiency balance still owed under the loan.

{¶ 16} Accordingly, the trial court did not err in admitting them, and Cadlerock proved that it was the assignee of the Note.

### Assignment of Personal Guaranties

{¶ 17} Appellants next argue that Cadlerock failed to prove that it was the assignee of the personal guaranties. We disagree.

{¶ 18} In *Audiovox Corp. v. Schindler*, 2d Dist. No. 20209, 2005-Ohio-2231, the court explained:

{¶ 19} "A guaranty is a promise by one person to pay the debts of another. 52 Ohio Jurisprudence 3d (1997) 238, Guaranty and Suretyship, Section 2. Further defined, a contract of guaranty is:

{¶ 20} "'[a] collateral engagement for the performance of the undertaking of another, and it imports the existence of two different and distinct obligations — one being that of the principal debtor and the other that of the guarantor. The obligation of a guarantor is collateral and secondary to the obligation of the principal debtor.'

{¶ 21} "'The principal debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of

the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.' 52 Ohio Jurisprudence 3d (1997) 239-240, Guaranty and Suretyship, Section 3. See, also, *Madison Natl. Bank v. Weber* (1927), 117 Ohio St. 290, 293, 158 N.E. 543." *Audiovox* at ¶37-39.

{¶ 22} In *Audiovox*, a case relied upon by appellants in support of their argument, the Second Appellate District explained:

{¶ 23} "[O]n March 20, 1985, Schindler executed an unconditional guaranty in which he agreed to be personally responsible for the 'prompt full payment when due of every claim of Audiovox which now exists and which may hereafter arise in favor of Audiovox as against customer [Factory Direct].' Additionally, the guaranty included a provision that specifically stated that 'it shall bind the undersigned [Schindler], his legal representatives and assigns and inure to Audiovox, its successors and assigns.

{¶ 24} "On February 25, 1992, Audiovox Midwest Corporation merged 'with and into' Audiovox Corporation, as evidenced by the 'Joint Plan and Agreement of Merger.' The magistrate had this document before her when she held that Audiovox, as it presently exists, was entitled to enforce Schindler's guaranty. This document provides in pertinent part:

{¶ 25} "'1. Upon the effectiveness of the merger the separate existence of MIDWEST shall cease and be extinguished and AUDIOVOX (hereinafter) sometimes

referred to as the 'Surviving Corporation' shall survive such merger and continue to exist under and be governed by the laws of Delaware and shall have the name AUDIOVOX CORPORATION.

{¶ 26} "'2. All of the property of MIDWEST, real, personal and mixed, tangible and intangible, including real estate, plants and equipment, furniture and fixtures, cash, accounts receivable, notes receivable, choses in action, going concern value, corporate name and good will, and any other assets of any character or description of which it may be possessed shall be taken and deemed to be transferred to and vested int he (sic) Surviving Corporation upon the merger becoming effective without further deed or act, and the Surviving Corporation shall assume and from and after the effective time of the merger shall be responsible for all of the liabilities and obligations whatsoever nature. If at any time the Surviving Corporation shall deem or be advised that any further assignments, desirable to vest or confirm in the Surviving Corporation the title to any property or assets of MIDWEST, the officers and directors of MIDWEST (or the persons holding such positions immediately prior to the merger) shall and will do all acts and things to confirm such property and assets in the Surviving Corporation and otherwise to carry out the purposes of this Plan and Agreement.' (Emphasis added)." *Audiovox* at ¶40-43.

{¶ 27} The Second Appellate District concluded: "It is clear from the language contained in the Individual Guaranty executed by Schindler, as well as the language in

the merger agreement, that Audiovox is the designated successor and/or assign of Audiovox Midwest. The language in both documents is specific and leaves no room for the interpretation Hemsath suggests. Thus, Audiovox is entitled to enforce Schindler's guaranty as a matter of law. We conclude that no genuine issue of material fact exists with respect to whether Schindler's personal liability to Audiovox was terminated or modified in any way when Audiovox Midwest Corporation merged 'with and into' Audiovox Corporation." *Audiovox* at ¶44.

{¶ 28} In another case cited by appellants, *Hurst v. Stith Equip. Co.* (1974), 133 Ga.App. 374, 210, 210 S.E.2d 851, the court disagreed that "the assignment of the principal obligation automatically passes the guaranty." But it explained that in certain circumstances, "the transfer of the principal obligation may operate as an assignment of the guaranty (38 Am.Jur.2d 1034, Guaranty s 36 (1968)." Id. at 377. The court further explained that "this rule *** appl[ies] only where the assignor of the principal obligation is also the obligee of the guaranty." Id. In *Hurst*, "the assignor of the principal obligation, Leasing Service, [was] not shown to be the obligee of the guaranty." Id.

{¶ 29} In the present case, unlike *Hurst*, the assignor — Fifth Third Bank — was the obligee of the Schwartzes' personal guaranties.

{¶ 30} Further, the Note here states that it is secured by, inter alia, "a separate Guaranty of even date herewith executed by each Guarantor in favor of Bank

(collectively the 'Guaranties') ***." Sally and Abraham Schwartz were identified as the individual Guarantors in the Note. The Note also identifies the personal guaranties, as well as other instruments securing the Note, as "Security Instruments." The Note further explains that "[a]ll of the terms, agreements, conditions, covenants, warranties, representations, provisions, and stipulations made by or imposed upon Borrower in the Security Instruments are hereby made part of this Note to the same extent, and with the same force and effect, as if they were fully recited herein."

{¶ 31} Each Guaranty likewise states that "[t]his Guaranty shall bind Guarantor and Guarantor's heirs, executors, administrators, personal representatives, successors and assigns, and shall inure to the benefit of the Bank and its successors and assigns."

{¶ 32} It is therefore clear from the language of the two instruments that the original parties to the agreement intended to keep the personal guaranties and the Note together. Accordingly, we conclude that Cadlerock proved that it was the assignee of the personal guaranties.

Damages

{¶ 33} Finally, appellants argue that Cadlerock failed to prove its damages. We disagree.

{¶ 34} Ellcessor testified that the total balance due as of September 2, 2010, was $502,192.95. This was sufficient evidence to prove damages. Appellants arguments

that Cadlerock *may have* incorrectly calculated the amount of interest or late fees are merely speculative.

{¶ 35} Accordingly, we conclude that Cadlerock proved its damages.

{¶ 36} As such, appellants' sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR